**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| LASHAWN ANTOINETTE CLARK<br>808 N. BRICE STREET<br>BALTIOMRE, MARYLAND 21217<br>(Baltimore City) | CLASS ACTION COMPLAINT |
| TIMOTHY HALL<br>5210 DISNEY AVENUE<br>BALTIMORE, MARYLAND 21225<br>(Anne Arundel County) | |
| CASSANDRA MURRAY<br>1 N. BEECHFIELD AVENUE, APT. #A<br>BALTIMORE, MARYLAND 21229<br>(Baltimore City) | |
| *individually and on behalf of*<br>*all others similarly situated,* | |
| Plaintiffs, | |
| v. | JURY TRIAL DEMANDED |
| BAY COUNTRY CONSUMER FINANCE, INC.<br>6619 RITCHIE HIGHWAY, SUITE 13<br>GLEN BURNIE, MD 21061 | |
| SERVE ON:    Jerome G. Brewis<br>              6619 Governor Ritchie Highway<br>              Suite #13<br>              Glen Burnie, MD 21061 | Case No. _____ |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs LaShawn Antoinette Clark ("Clark"), Timothy Hall ("Hall") and Cassandra Murray ("Murray") (collectively "Named Plaintiffs") on individually and on behalf of all others similarly situated, through their attorney Cory L. Zajdel of Z LAW, LLC, hereby submit this

Class Action Complaint against Defendant Bay Country Consumer Finance, Inc. ("Bay Country") and for support states as follows:

## I.      PRELIMINARY STATEMENT

1.      Named Plaintiffs institute this class action individually and on behalf of consumer borrowers seeking damages resulting from the predatory lending practices of Defendant Bay Country.

2.      Name Plaintiffs allege that Bay Country violated statutory, common law and contractual obligations against them and on behalf of the Classes alleged herein and seek to recover actual damages, statutory damages, interest, attorney fees, and the costs of this action against Bay Country for multiple violations of Maryland's Credit Grantor Closed End Credit Provisions, Md. Code Ann., Comm. Law §§ 12-1001 *et seq.* ("CLEC"), Maryland's Consumer Protection Act, Md. Code Ann., Comm. Law, §§ 13-101 *et seq.* ("CPA") and Maryland Common Law.

3.      Bay Country extends financing to more than five-hundred borrowers in Maryland each year.

4.      Many of these financing contracts elect and are governed by CLEC.

5.      Bay Country is a sub-prime lender and extends credit under CLEC at a *stated* simple interest rates as high as twenty-four percent (24%).

6.      Bay Country has made hundreds, if not thousands of CLEC loans in each year from 2000 to the present.

7.      Because CLEC limits the simple interest rate that a Maryland creditor grantor or lender can charge and collect and because Bay Country regularly lends money at the highest legal rate, Bay Country chose to pad and inflate other fees charged in the transaction and to add

bogus fees for insurance, products or services that were never obtained or that were duplicative and unnecessary in which Bay Country was either directly or indirectly compensated or retained the overcharge or commission in order to profit further from the transaction and to intentionally side-step these strict requirements.

8.      As part of its general business practices, Bay Country charges every borrower substantial fees with respect to the origination of each consumer loan including but not limited to charges for non-filing insurance, recording fees, credit insurances and refinancing/loan fees.

9.      In each transaction, Bay Country takes a security interest in a vehicle or goods that were used for personal, family and household purposes.

10.      As part of each Non-Filing Fee Class transaction Bay Country charges more for non-filing insurance than it would cost for Bay Country to record its security interest.

11.      As part of each Non-Filing Fee Class transaction Bay Country retains a portion of the non-filing fee insurance premium charged to Class members.

12.      In each Recording Fee Class transaction, Bay Country charges each consumer a recording fee that is larger than the amount actually submitted to or collected by the governmental entity responsible for recording security interests.

13.      In each Recording Fee Class transaction, Bay County retains a portion of the filing fees charged to the Class and in some instances retains the entire amount.

14.      Bay Country's outrageous and illegal origination fees violate Maryland law and have enriched Bay Country unfairly at the expense of Maryland borrowers, a practice this suit seeks to end.

15.     Bay Country's uniform predatory lending, origination and servicing practices and routine charging of bogus, inflated and illegal fees to Class members makes this case particularly suitable for resolution through a class action lawsuit.

## II.     JURISDICTION

16.     This Court has jurisdiction over this case under 28 U.S.C. §§ 1332, 1441, 1446, 1453 and the Class Action Fairness Act of 2005.

17.     Venue in the United States District Court for the District of Maryland (Northern Division) is proper pursuant to 28 U.S.C. § 1391.

18.     Named Plaintiff entered into their loan agreements in the Northern Division. Named Plaintiffs resided in the Northern Division when they entered into the loan agreements. Named Plaintiffs currently reside in the Northern Division.  Defendant Bay Country operates its principal place of business in the Northern Division.

## III.     PARTIES

19.     Plaintiff Clark is a natural person currently residing at 808 N. Brice Street, Baltimore, Maryland 21217.  Clark is a resident of Baltimore City and is a "consumer borrower" as that term is defined by Md. Code Ann., Comm. Law § 12-1001(f).

20.     Plaintiff Hall is a natural person currently residing at 5210 Disney Avenue, Baltimore, Maryland 21225.  Hall is a resident of Anne Arundel County and is a "consumer borrower" as that term is defined by Md. Code Ann., Comm. Law § 12-1001(f).

21.     Plaintiff Murray is a natural person currently residing at 1 N. Beechfield Avenue, Apt. #A, Baltimore, Maryland 21229.  Murray is a resident of Baltimore City and is a "consumer borrower" as that term is defined by Md. Code Ann., Comm. Law § 12-1001(f).

22.     Defendant Bay Country is a Maryland corporation doing business within this state and with its principal place of business located at 6619 Ritchie Highway, Suite #13, Glen Burnie, Maryland 21061.

23.     Bay Country maintains its principle place of business in Anne Arundel County.

24.     Bay Country is a "credit grantor" in each Class member transaction as that term is defined by Md. Code Ann., Comm. Law § 12-1001(g).

## IV.     FACTUAL ALLEGATIONS

25.     Bay Country's routine business practice is to charge for recording fees and non-filing fees that are either bogus or inflated charges in order to increase its profits on each CLEC extension of credit.

26.     Bay Country's practice of inflating charges for recording fees and non-filing fees as stated herein in connection with CLEC credit extensions was undertaken in more than five hundred class member transactions and continues to date.

   *a.     LaShawn Clark's December 9, 2008 Loan*

27.     On or about December 9, 2008, Clark executed a Combination Statement of Transaction, Promissory Note & Security Agreement obtaining a loan from Defendant Bay Country.

28.     As part of the December 9, 2008 transaction, Bay Country took a lien and security interest on Clark's vehicle and some personal property.

29.     The December 9, 2008 Combination Statement of Transaction, Promissory Note & Security Agreement lists Clark's 2001 Cadillac DeVille as collateral, grants a security interest in the automobile and personal property in exchange for the financing provided by Bay Country at an annual stated simple interest rate of 23.99%.

30.     The December 9, 2008 Combination Statement of Transaction, Promissory Note & Security Agreement also specifically and unequivocally elects Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann., Comm. Law. §§ 12-1001, *et seq.*, as the controlling law.

31.     Clark's CLEC loan from Bay Country totaled $4,320.16.

32.     Of the $4,320.16 that Clark borrowed from Bay Country, only $750 was distributed to Clark.

33.     In connection with the December 9, 2008 extension of consumer credit to Clark, Bay Country charged the following fees:  (a) $2,269.58 to pay off balance on prior Bay Country loan; (b) $500 for Debt Cancellation Agreement; (c) $219.58 for Household Goods Insurance; (d) **$81 for Non-Filing Insurance**; (e) $200 for Lender's Single Interest Insurance; (f) **$100 for Amounts Paid to Public Officials for Recording Fees**; (g) $200 for Loan Fee; and (h) $750 distributed to Clark as the proceeds of the loan.

34.     In order for Clark to receive the $750 that was distributed to her in connection with the December 9, 2008 extension of credit, Clark wound up paying $1,300.58 in new fees and charges.

35.     On information and belief, Bay Country did not disburse any monies to the Maryland Motor Vehicle Administration for any purpose in connection with the December 9, 2008 extension of credit to Clark.

36.     On information and belief, Bay Country did not disburse any monies to the Maryland State Department of Assessments and Taxation for any purpose in connection with the December 9, 2008 extension of credit to Clark.

37.     On information and belief, Bay Country did not record anything with public officials in connection with the December 9, 2008 extension of credit to Clark.

38.     On information and belief, Bay Country charged Clark a recording fee that is larger than the amount actually submitted to or collected by the governmental entity responsible for recording security interests.

39.     On information and belief, Bay Country retained all or a portion of the "Amounts Paid to Public Officials for Recording Fees" in connection with the December 9, 2008 extension of credit to Clark.

40.     On information and belief, Bay Country charged more for non-filing insurance than it would cost for Bay Country to record its security interest in connection with the December 9, 2008 extension of credit to Clark.

41.     In connection with the December 9, 2008 extension of credit to Clark, Bay Country retained a portion of the non-filing fee insurance premium.

42.     Clark made payments to Bay Country exceeding the total amount borrowed from Bay Country.

43.     Each payment made by Clark included finance charges, fees and costs.

b.     *Timothy Hall's November 30, 2009 Loan*

44.     On or about November 30, 2009, Hall executed a Combination Statement of Transaction, Promissory Note & Security Agreement obtaining a loan from Defendant Bay Country.

45.     As part of the November 30, 2009 transaction, Bay Country took a lien and security interest on Hall's vehicle and some personal property.

46.     The November 30, 2009 Combination Statement of Transaction, Promissory Note & Security Agreement lists Hall's 2006 Mitsubishi Lancer as collateral, grants a security interest in the automobile and personal property in exchange for the financing provided by Bay Country at an annual stated simple interest rate of 24.00%.

47.     The November 30, 2009 Combination Statement of Transaction, Promissory Note & Security Agreement also specifically and unequivocally elects CLEC as the controlling law.

48.     Hall's CLEC loan from Bay Country totaled $3,541.70.

49.     Of the $3,541.70 that Hall borrowed from Bay Country, only $500 was distributed to Hall.

50.     In connection with the November 30, 2009 extension of consumer credit to Hall, Bay Country charged the following fees:  (a) $2,047.99 to pay off balance on prior Bay Country loan; (b) $293.71 for Household Goods Insurance; (c) **$150 for Non-Filing Insurance**; (d) $250 for Lender's Single Interest Insurance; (e) **$100 for Amounts Paid to Public Officials for Recording Fees**; (f) $200 for Loan Fee; and (g) $500 distributed to Hall as the proceeds of the loan.

51.     In order for Hall to receive the $500 that was distributed to him in connection with the November 30, 2009 extension of credit, Hall wound up paying $993.71 in new fees and charges.

52.     On information and belief, Bay Country did not disburse any monies to the Maryland Motor Vehicle Administration for any purpose in connection with the November 30, 2009 extension of credit to Hall.

53.     On information and belief, Bay Country did not disburse any monies to the Maryland State Department of Assessments and Taxation for any purpose in connection with the November 30, 2009 extension of credit to Hall.

54.     On information and belief, Bay Country did not record anything with public officials in connection with the November 30, 2009 extension of credit to Hall.

55.     On information and belief, Bay Country charged Hall a recording fee that is larger than the amount actually submitted to or collected by the governmental entity responsible for recording security interests.

56.     On information and belief, Bay Country retained all or a portion of the "Amounts Paid to Public Officials for Recording Fees" in connection with the November 30, 2009 extension of credit to Hall.

57.     On information and belief, Bay Country charged more for non-filing insurance than it would cost for Bay Country to record its security interest in connection with the November 30, 2009 extension of credit to Hall.

58.     In connection with the November 30, 2009 extension of credit to Hall, Bay Country retained a portion of the non-filing fee insurance premium.

59.     Hall made payments to Bay Country exceeding the total amount borrowed from Bay Country.

60.     Each payment made by Hall included finance charges, fees and costs.

c.      *Cassandra Murray's June 4, 2010 Loan*

61.     On or about June 4, 2010, Murray executed a Combination Statement of Transaction, Promissory Note & Security Agreement obtaining a loan from Defendant Bay Country.

62.     As part of the June 4, 2010 transaction, Bay Country took a lien and security interest on Murray's vehicle and some personal property.

63.     The June 4, 2010 Combination Statement of Transaction, Promissory Note & Security Agreement lists Murray's 1999 Ford Escort as collateral, grants a security interest in the automobile and personal property in exchange for the financing provided by Bay Country at an annual stated simple interest rate of 23.99%.

64.      The June 4, 2010 Combination Statement of Transaction, Promissory Note & Security Agreement also specifically and unequivocally elects CLEC.

65.     Murray's CLEC loan from Bay Country totaled $3,588.82.

66.     Of the $3,588.82 that Murray borrowed from Bay Country, only $500 was distributed to Murray.

67.     In connection with the June 4, 2010 extension of consumer credit to Murray, Bay Country charged the following fees:  (a) $361.93 for Household Goods Insurance; (b) **$150 for Non-Filing Insurance**; (c) $250 for Lender's Single Interest Insurance; (d) **$100 for Amounts Paid to Public Officials for Recording Fees**; (e) $200 for Loan Fee; and (f) $500 distributed to Murray as the proceeds of the loan.

68.     In order for Murray to receive the $500 that was distributed to her in connection with the June 4, 2010 extension of credit, Murray wound up paying $1,061.93 in new fees and charges.

69.     On information and belief, Bay Country did not disburse any monies to the Maryland Motor Vehicle Administration for any purpose in connection with the June 4, 2010 extension of credit to Murray.

70.     On information and belief, Bay Country did not disburse any monies to the Maryland State Department of Assessments and Taxation for any purpose in connection with the June 4, 2010 extension of credit to Murray.

71.     On information and belief, Bay Country did not record anything with public officials in connection with the June 4, 2010 extension of credit to Murray.

72.     On information and belief, Bay Country charged Murray a recording fee that is larger than the amount actually submitted to or collected by the governmental entity responsible for recording security interests.

73.     On information and belief, Bay Country retained all or a portion of the "Amounts Paid to Public Officials for Recording Fees" in connection with the June 4, 2010 extension of credit to Murray.

74.     On information and belief, Bay Country charged more for non-filing insurance than it would cost for Bay Country to record its security interest in connection with the June 4, 2010 extension of credit to Murray.

75.     In connection with the June 4, 2010 extension of credit to Murray, Bay Country retained a portion of the non-filing fee insurance premium.

76.     Murray made payments to Bay Country exceeding the total amount borrowed from Bay Country.

77.     Each payment made by Murray included finance charges, fees and costs.

V.      **CLASS ACTION ALLEGATIONS**

78.     This action is properly maintainable as a plaintiff class action pursuant to FED. R. CIV. P. 23.

79.     The Classes consist of:

Non-Filing Insurance Class

**All persons who were charged more than fifty dollars for Non-Filing Insurance by Bay Country Consumer Finance in connection with a credit contract governed by CLEC.**

Recording Fee Class

**All persons who were charged for Recording Fees to Public Officials by Bay Country Consumer Finance in connection with a credit contract governed by CLEC.**

Excluded from all Classes are those individuals who now are or have ever been executives of the Defendant and the spouses, parents, siblings and children of all such individuals.

80.     The Classes, as defined above, are identifiable.   The Named Plaintiffs are members of each Class.

81.     The Classes consist, at a minimum, of several hundred (and likely thousands) of persons who entered into CLEC credit contracts with Bay Country and is thus so numerous that joinder of all members is clearly impracticable.  FED. R. CIV. P. 23(a)(1).

82.     There are questions of law and fact which are not only common to the Classes but which predominate over any questions affecting only individual class members.  FED. R. CIV. P. 23(a)(2).

83.     The common and predominating questions include, but are not limited to:

(a)     Whether Bay Country violated CLEC in each Non-Filing Insurance Class member's credit transaction by charging more than $50.00 for non-filing insurance;

(b)     Whether Bay Country violated CLEC in each Non-Filing Insurance Class member's credit transaction by retaining or receiving a commission for all or a portion of the non-filing insurance premium;

(c)     Whether Bay Country overcharged each Non-Filing Insurance Class member by charging more than $50.00 for non-filing insurance;

(d)     Whether Bay Country collected fees that were not actual and verifiable expenses including Recording Fees to Public Officials;

(e)     Whether Bay Country retained all or a portion of the Recording Fees to Public Officials;

(f)     Whether Bay Country knowingly violated CLEC provisions and therefore should be required to forfeit three times the amount of interest, fees and other charges collected in excess of those allowed by CLEC;

(g)     Whether Bay Country affirmatively misrepresented or failed to disclose to Class Members in writing that it was collecting money on behalf of a governmental entity when in fact Bay Country was collecting recording fees to pad profits and in exchange for no goods or services at all;

(h)     Whether Bay Country failed to disclose to Class Members that it would retain the entire or inflated charge for Recording Fees to Public Officials that provided no benefit to Class Members but rather only allowed Bay Country to increase its profits;

(i)     Whether Bay Country failed to disclose to Class Members the material fact that Bay Country inflated the amount of all Class loans in order to include bogus and inflated fees including but not limited to the Recording Fees to Public Officials;

(j)     Whether Bay Country used funds received for Recording Fees to Public Officials to actually pay the Recording Fees to Public Officials disclosed.

84.     Claims of Named Plaintiffs are typical of the claims of the respective members of the Classes within the meaning of FED. R. CIV. P. 23(a)(3), and are based on and arise out of similar facts constituting the wrongful conduct of Bay Country.

85.     Named Plaintiffs will fairly and adequately protect the interests of the Classes within the meaning of FED. R. CIV. P. 23(a)(4).  Named Plaintiffs are committed to vigorously litigating this matter and is cognizant of their duties and responsibilities to all Class members.

86.     Named Plaintiffs have secured counsel experienced in handling consumer class actions and complex consumer litigation.

87. Neither Named Plaintiffs nor their counsel has any interests which might cause them not to vigorously pursue these claims.

88. This action should proceed as a plaintiff class action under FED. R. CIV. P. 23(b)(2) because Bay Country acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole.

89. This action should proceed as a class action under FED. R. CIV. P. 23(b)(3). Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of FED. R. CIV. P. 23(b)(3).

90. No member of the Classes has a substantial interest in individually controlling the prosecution of a separate action, but, if he or she does, he or she may exclude him or herself from the Classes upon receipt of notice under FED. R. CIV. P. 23(c).

91. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation and the amount at stake for each individual Class member.

92. Named Plaintiffs' counsel is experienced in class actions, and foresees little difficulty in the management of this case as a class action.

## VI. CAUSES OF ACTION

### COUNT ONE
### (MARYLAND CREDIT GRANTOR CLOSED END CREDIT PROVISIONS)

93. Named Plaintiffs re-allege and incorporate by reference the allegations set forth herein and further allege:

94.     Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann., Comm. Law §§ 12-1001, *et seq.*, restricts credit grantors such as Bay Country from charging to consumers any fees, charges, insurance or interest not specifically provided for under CLEC and the closed end credit contract.

95.     CLEC also restricts credit grantors from charging a fee unless it is an actual and verifiable expense of the credit grantor that is not retained by the credit grantor.

96.     In the event, however, that the credit grantor charges more than the stated rate of interest disclosed, assesses fees prohibited by or not specifically provided for in CLEC, charges for insurances prohibited by or not specifically provided for in CLEC overcharges, inflates the amount charged, or retaining any portion of a fee that is not an actual and verifiable expense, the credit grantor must forfeit all interest charges, fees and other charges with respect to the loan.

97.     In violation of CLEC, Bay Country:

      a.      assessed fees and charges otherwise prohibited by CLEC;

      b.      assessed and collected fees that were not actual and verifiable expenses and retained all or a portion of those fees;

      c.      collected insurance premiums that were not actual and verifiable expenses and retained all or a portion of those insurance premiums;

98.     Bay Country knowingly engaged in these violations of CLEC, § 12-1005.

## COUNT TWO
### (MARYLAND CONSUMER PROTECTION ACT)

99.     Named Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

100.    Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Comm. Law §§ 13-101, *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices,

*inter alia,* in the extension of consumer credit and in the collection of consumer debts.   §§ 13-303(3) and (4).

101.     As a "person" under the CPA, § 13-101(h), Bay Country is prohibited from engaging in unfair and deceptive trade practices.

102.     The CPA, § 13-301(1), specifically prohibits Bay Country from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers.

103.     The CPA, § 13-301(3), further prohibits Bay Country from failing to state a material fact if the failure deceives or tends to deceive.

104.     In violation of the CPA, §§ 13-303(3) - (4) and § 13-301(1), Bay Country affirmatively misrepresented to Named Plaintiffs and the Classes in writing: (i) the actual cost to file and release a UCC-1 statement in Maryland; and (ii) that Bay Country was collecting a specific amount of money on behalf of a governmental entity when in fact Bay Country was collecting recording fees to pad profits.

105.     These written statements were false and misleading and tended to and did deceive Named Plaintiffs and Class Members who agreed to the terms of the credit contracts and made payments to Bay Country which were not due and owing.

106.     In violation of the CPA, § 13-303(3) - (4) and § 13-301(3), Bay Country failed to disclose to Named Plaintiffs and Class Members: (i) the actual cost to file and release a UCC-1 statement in Maryland; (ii) that it would retain the inflated charge for Recording Fees to Public Officials that provided no benefit to Class Members but rather only allowed Bay Country to increase its profits; and (iii) the material fact that Bay Country inflated the amount of all Class loans in order to include bogus and inflated fees including but not limited to the Recording Fees

to Public Officials.

107.    These failures to disclose material facts led Named Plaintiffs and Class Members to make payments which were not due and which they would not have made had Bay Country informed them of these material facts.

108.    These written statements were false and misleading and tended to and did deceive Named Plaintiffs and the Classes who made payments to Bay Country toward interest and these illegally assessed fees and charges which were not due and owing.

109.    As a result of Bay Country's unfair and deceptive trade practices in violation of the CPA, Named Plaintiffs and the Classes were induced to make payments to Bay Country on interest charges, insurance premiums and non-existent debts, causing Named Plaintiffs and the Classes injury and loss.

## COUNT THREE
### (RESTITUTION AND UNJUST ENRICHMENT)

110.    Named Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

111.    By paying money on the fees and charges discussed herein, Named Plaintiffs and Class Members conferred a benefit of these illegally collected charges upon Bay Country.

112.    Bay Country accepted the benefits conferred upon them by Named Plaintiffs and Class Members when they accepted the money paid toward illegally assessed fees and charges. Further, Bay Country was aware of, and had knowledge of, the benefits conferred on them, as it demanded those benefits.

113.    Bay Country's collection, acceptance and retention of these fees and charges, when Bay Country was not entitled to the fees and charges as a matter of law, is and was and

continues to be unjust and inequitable, and Bay Country has not refunded the fees and charges to Named Plaintiffs and Class Members.

114.     Bay Country should not be permitted to retain the benefits of those illegal fees and charges.  Bay Country's continued withholding of the illegal fees and charges is improper.

115.     Named Plaintiffs and members of the Classes conferred these unjust benefits upon Bay Country after and as a result of Bay Country's misconduct as set forth herein.

### PRAYER FOR RELIEF

WHEREFORE, Named Plaintiffs respectfully pray that this Court:

A.     Assume jurisdiction of this case;

B.     Enter an Order certifying the Classes under FED. R. CIV. P. 23(b)(2) and (b)(3).

C.     Enter an Order awarding Named Plaintiffs and the Classes the statutory penalties imposed by CLEC, § 12-1018, by returning to Named Plaintiffs and the Classes all sums paid as interest, costs, fees or other charges;

D.     Enter an Order awarding Named Plaintiffs and the Classes three times the interest, costs, fees, and other charges which Bay Country collected in excess of that allowed by CLEC pursuant to § 12-1018;

E.     Enter an Order awarding Named Plaintiffs and members of the Classes actual damages, reasonable attorney's fees and costs in accordance with CPA, § 13-408.

F.     Enter an Order awarding Named Plaintiffs and members of the Classes compensatory damages as the evidence shall warrant;

G.     Enter an Order awarding pre-judgment and post-judgment interest on all sums awarded to Named Plaintiffs and members of the Classes; and

H.     Enter an Order award such other relief as the court deems appropriate.

Respectfully submitted,

Z LAW, LLC

Dated: August 4, 2011                    By:_____/s/ 28191_____
                                            Cory L. Zajdel, Esq.
                                            10811 Red Run Blvd., Ste. 204
                                            Owings Mills, Maryland 21117
                                            (443) 213-1977
                                            clz@zlawmaryland.com

                                            **Attorney for Named Plaintiffs and the Classes**

## **JURY TRIAL**

Named Plaintiffs LaShawn Clark, Timothy Hall and Cassandra Murray individually and on behalf of all others similarly situated demands trial by jury.

_____
/s/ 28191
Cory L. Zajdel
